# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| **REBECCA O. BOLTE,** | ) | Case No. 1:06cv1845 |
| | ) | |
| Plaintiff, | ) | **JUDGE SARA LIOI** |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **ELAINE L. CHAO, SECRETARY, U.S.** | ) | |
| **DEPARTMENT OF LABOR, OFFICE OF** | ) | |
| **WORKERS' COMPENSATION** | ) | |
| **PROGRAMS, ET AL.** | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Rebecca O. Bolte (plaintiff) filed the present action against defendants, Elaine L. Chao, Secretary, U.S. Department of Labor, Office of Workers' Compensation Programs (OWCP), and the OWCP (collectively defendants) seeking review of various determinations by the OWCP in connection with her claim for benefits for a work-related injury.

Pursuant to Fed. R. Civ. P. 12(b)(1), defendants have sought dismissal of this action (Docket No. 6). Plaintiff opposes the motion, and defendants have filed a reply (Docket Nos. 24 and 26, respectively). For the reasons that follow, the motion to dismiss is granted.[1]

---

[1] The Court finds that the record is sufficiently developed, and that the arguments associated with defendant's motion to dismiss have been fully brief. As such, the Court finds no need for oral argument on the motion, and plaintiff's motion for oral argument (Document No. 27) is, therefore, **DENIED**.

# I.
# FACTUAL AND PROCEDURAL BACKGROUND

To fully evaluate plaintiff's due process claims, it is important to review the process afforded her at the administrative level. On April 23, 1998, plaintiff, a postal employee, sustained an injury to her shoulder while working at the Akron Mail Post Office as a casual clerk. OWCP determined that plaintiff had sustained a work-related right shoulder strain. Plaintiff was awarded compensation benefits and provided rehabilitation services (Docket No. 6, Attachment A, Affidavit of Edward Duncan at ¶ 2). Plaintiff was subsequently referred by OWCP to Dr. Moses Leeb for a second opinion evaluation. Following his evaluation, Dr. Leeb offered the opinion that plaintiff's accepted injury, a right shoulder strain, had resolved. *Id*. at ¶ 3.

On August 20, 1999, OWCP advised plaintiff that it was terminating her wage-loss benefits and medical benefits based on the medical opinion of Dr. Leeb. Plaintiff responded to OWCP's notice of termination, advising OWCP that she continued to have pain. By decision dated October 12, 1999, OWCP terminated plaintiff's wage-loss and medical benefits. *Id*. at ¶ 4.

Plaintiff filed a timely request for a hearing before an OWCP hearing representative. *Id.* at ¶ 5. A hearing was conducted on February 16, 2000, at which time, plaintiff, who was represented by counsel, was afforded an opportunity to testify and offer evidence in support of her claim. The record shows that plaintiff also submitted the medical reports of Dr. Michael Pryce, an orthopaedic physician, Dr. April Zink, a chiropractor, and Dr. Robert Bell, a shoulder specialist (Docket No. 24 at 7). On June 27, 2000, the OWCP hearing representative affirmed OWCP's terminating plaintiff's benefits. The hearing representative found that OWCP properly terminated plaintiff's benefits and that the medical evidence

submitted by plaintiff was not sufficient to create a conflict with the opinion of Dr. Leeb (Duncan Aff, Ex. 4).

On September 6, 2000, plaintiff sought reconsideration of OWCP's decision to terminate her compensation.  In a decision dated October 31, 2000, OWCP declined plaintiff's invitation to modify its prior decision, finding that the evidence she submitted did not warrant modification (Duncan Aff., Ex. 5).

Plaintiff subsequently appealed OWCP's decisions to the Employees' Compensation Appeals Board (ECAB). On November 15, 2001, the ECAB affirmed OWCP's termination of medical benefits and found that the medical evidence submitted by plaintiff was not sufficient to support her claim for continuing benefits (Duncan Aff. ¶ at 7, Ex. 6 at 3-4). Plaintiff sought reconsideration of this decision on March 7, 2002 and October 22, 2002.  Both requests were denied by OWCP (Duncan Aff. at ¶¶ 8, 9, Ex. 7 and Ex. 8).  In a May 29, 2002 decision denying reconsideration, OWCP reviewed plaintiff's submitted medical documentation and found that it was insufficient to create a conflict with the medical opinion of Dr. Leeb that plaintiff no longer had any residuals from her shoulder injury (Duncan Aff. at ¶ 7, Ex. 7).

On October 22, 2002, plaintiff requested reconsideration again before OWCP. In support of this request, plaintiff's counsel presented the argument, also raised here, that plaintiff's condition had not been accurately represented in prior proceedings. Plaintiff was permitted to submit the medical reports from several physicians and medical professionals, including the report of Dr. Vladimier Djuric. After reviewing all of the evidence, including the medical reports, the OWCP denied the request for reconsideration. In its January 13, 2003 decision, the OWCP found that none of the medical evidence contained a well rationalized opinion on the causal relationship between plaintiff's current condition and her work-related

3

injury (Duncan Aff. at ¶ 9, Ex. 8).

Plaintiff appealed this ruling to the ECAB, which issued a decision on October 14, 2003 affirming the OWCP's determination. The ECAB reviewed all of the medical evidence in rendering its decision. With respect to the opinion of Dr. Djuric that plaintiff suffered from a shoulder injury involving a sprain/strain and somatic dysfunction of the upper thoracic spine and ribs, the Board noted that Dr. Djuric made no attempt to explain how his objective findings comported with the objective diagnostic testing already of record. Ultimately, the ECAB concluded that none of the medical evidence submitted by plaintiff contained a consistent diagnosis that would have supported a finding that the OWCP erred in failing to accept a sprain/strain and somatic dysfunction of the upper thoracic spine and ribs as the original work-related injury (Duncan Aff. at ¶ 10, Ex. 9).

Plaintiff requested reconsideration and rehearing with OWCP again on October 8, 2004. As a part of this request, plaintiff asked that a claim for sprain/strain injury and somatic dysfunction of the thoracic spine and ribs be recognized. OWCP reviewed all of the evidence, including the previously submitted medical reports from all of the treating and consulting physicians. OWCP determined that the evidence was not sufficient to warrant modification of its prior decision. In reaching this conclusion, the OWCP emphasized, once again, that plaintiff's medical evidence did not support a causal relationship between her current condition and her work-related injury[2] (Duncan Aff. at ¶ 11, Ex. 10).

Plaintiff initiated the present lawsuit on August 1, 2006.[3] In her Complaint, plaintiff alleged that OWCP denied her substantive and procedural due process by

---

[2] Plaintiff appealed this decision, as well. On March 8, 2006, the ECAB affirmed the OWCP's decision finding that the opinion of Dr. Djuric was insufficient to establish any new or continuing employment-related injury. (Duncan Aff. at ¶ 14, Ex. 13). She subsequently petitioned ECAB for reconsideration. This petition was denied on July 2, 2006. (Duncan Aff. at ¶ 14, Ex. 13).
[3] This matter was originally assigned to the Honorable James S. Gwin. The action was reassigned to the docket of the Honorable Sara Lioi on March 19, 2007.

4

the manner in which it processed her claim for disability benefits (Docket No. 1 at ¶¶ 33, 34). Defendants seek dismissal of the action on the ground that the Court lacks subject matter jurisdiction over the action. The Court agrees that it is without subject matter jurisdiction, and that dismissal is, therefore, appropriate.

## II.
## STANDARD OF REVIEW

There are two general categories into which Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction fall: facial attacks and factual attacks. Fed. R. Civ. P. 12(b)(1); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994), *cert. denied*, 513 U.S. 868 (1994). A facial attack challenges the sufficiency of the pleading itself. On such a motion, the Court must take all of the material allegations in the complaint as true and construe them in the light most favorable to the nonmoving party. *Id, citing Scheuer v. Rhodes*, 416 U.S. 232, 235-37 (1974). In contrast, a factual attack, as is made here, challenges the factual existence of subject matter jurisdiction.

On this form of motion, the Court's inquiry is limited to determining whether the challenged pleadings set forth allegations sufficient to show the Court that it has jurisdiction over the subject matter, "no presumptive truthfulness applies to the factual allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id. (internal citations omitted); RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1135 (6th Cir. 1996). In reviewing such a motion, a district court is to probe the facts and assess the validity of its own jurisdiction. In doing so, the Court has wide discretion to consider affidavits and documents outside the complaint, and may even conduct a limited evidentiary hearing if necessary. *Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990). In connection with this analysis, the plaintiff bears the burden of demonstrating that

the Court has and may appropriately exercise jurisdiction over the subject matter. *RMI Titanium Co.*, 78 F.2d at 1134. The Court may examine evidence of its power to hear a case, and must make any factual findings necessary to determine whether it has jurisdiction. *Kroll v. United States,* 58 F.3d 1087, 1090 (6th Cir. 1995); *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986).

## III.
## DISCUSSION AND LAW

### A. FECA Statutory Framework and Judicial Review

Plaintiff's compensation claim arose under the Federal Employee Compensation Act (FECA), 5 U.S.C. §§ 8101-8151. FECA establishes a comprehensive scheme under which federal employees may seek benefits for work-related accidents or death. FECA vests plenary authority in the Secretary of Labor and her authorized agents to "administer and decide all questions arising under [the Act]."[4] 5 U.S.C. § 8145. *See Staacke v. United States Secretary of Labor,* 841 F.2d 278, 282 (9th Cir. 1988). The Secretary may award or refuse to award compensation, and may, at her discretion, "end, decrease, or increase the compensation previously awarded." 5 U.S.C. § 8128(a)(1). Consequently, the discretion accorded to the Secretary, "to make the police choices associated with disability decisions is virtually limitless." *Staacke,* 841 F.2d at 282, *citing Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir. 1985).

FECA provides the exclusive remedy for federal employees who sustain work-related injuries. 5 U.S.C. § 8116. Specifically, FECA provides, in relevant part:

> The action of the Secretary or his designee in allowing or denying a payment under this subchapter is—(1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2)

---

[4] This includes the authority to administer the payment of benefits, adjudicate claims, decide all questions arising under FECA, and promulgate the regulations necessary for the administration and enforcement of FECA. 5 U.S.C. §§ 8124(a), 8145. Pursuant to § 8145, the Secretary has delegated this authority to the Director of OWCP, who is responsible for the administration and implementation of FECA. 20 C.F.R. § 10.1

6

> not subject to review by another official of the United States or by a court by mandamus or otherwise.

§ 8128(b). The unmistakable language of § 8128(b) makes clear that administrative decisions under FECA are not subject to judicial review. *Owens v. Brock*, 860 F.2d 1363 (6th Cir. 1988). *See Czerkies v. United States Dep't of Labor,* 73 F.3d 1435, 1438 (7th Cir. 1996).

While FECA forecloses judicial review of benefit determinations, federal courts retain jurisdiction to address colorable constitutional challenges to OWCP decisions. *Owens*, 860 F.2d at 1367; *Rodrigues*, 769 F.2d at 1348. However, "'[c]ourts do not acquire jurisdiction to hear challenges to benefits determinations merely because those challenges are cloaked in constitutional terms.' A 'rhetorical cover, will not open the door.'" *Czerkies*, 73 F.3d at 1439, *quoting Sugrue v. Derwinski,* 26 F.3d 8, 11 (2nd Cir. 1994).

B. **Plaintiff's Due Process Claim**

Plaintiff rests federal jurisdiction upon her claim that she was denied due process of law (Docket No. 1 at ¶¶ 33, 34). According to plaintiff, she was deprived of due process because she was not given a new hearing upon her "accurate" injury, the panel that denied her request for reconsideration consisted of only two members, and she was not permitted to issue subpoenas to obtain medical evidence on reconsideration (Docket No. 1 at ¶¶ 21, 27, 31, 33, 34).

To consider the process due plaintiff, the following three factors are to be weighed:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

7

*Matthews v. Eldridge*, 424 U.S. 319, 335 (1976). The Court will now evaluate each of plaintiff's challenges to the proceedings before OWCP in turn to determine if she was denied due process of law.

### 1. Rehearing on New Diagnosis

At the heart of plaintiff's lawsuit is the belief that she is entitled to a new hearing because she, "through no fault of her own, was misdiagnosed by Dr. Bulen, CorpCare's employee." (Docket No. 1 at ¶ 6; Docket No. 20 at 17). As discussed above, Plaintiff was originally diagnosed with a right shoulder strain. This diagnosis served as the basis for the OWCP's original decision to award benefits. Plaintiff's benefits were subsequently terminated when OWCP found that the accepted shoulder injury had resolved.

It is plaintiff's position, however, that she was not properly diagnosed until October 8, 2002, four and one-half years after her accident, when she was examined by Dr. Valdimier Djuric. Dr. Djuric diagnosed plaintiff as suffering from "a strain/sprain of the upper thoracic spine and ribs with a probable rib capsular." Plaintiff contends that Dr. Djuric's opinion represents the only "true" or "accurate" diagnosis of her injuries. She further claims that because this "accurate" injury was not presented at the February, 2002, hearing, she was entitled to a new hearing, and the failure to provide her with a new hearing constituted a deprivation of her right to procedural due process (Docket No. 1 at ¶ 33).

It is important to note that neither the FECA, nor the OWCP regulations, provides for a rehearing as part of the review process. Plaintiff's request for a rehearing was made in conjunction with her October 8, 2004 request for reconsideration. Consequently, the OWCP properly treated her joint request as one for reconsideration only, as it was the appropriate avenue for relief from an OWCP decision.

Plaintiff did avail herself of this reconsideration process on a number of occasions. Significant to the analysis of due process, it is clear that plaintiff was permitted to offer a number of medical reports, including the report of Dr. Durjic. After weighing the evidence presented, the OWCP found that none of these reports offered a sufficient causal relationship between plaintiff's current condition and her work-related injury. On appeal from the OWCP, the ECAB ruled that, based upon the inconsistency in plaintiff's proffered medical evidence, the OWCP did not err in failing to accept Dr. Djuric's diagnosis. In response to plaintiff's October 8, 2004 request for rehearing and reconsideration, the OWCP again emphasized that plaintiff's medical evidence did not support a causal relationship between her current condition and her work-related injury.

At the risk of overstating the obvious, the OWCP did not err in conducting the February, 2000 hearing on the injury that was diagnosed by Dr. Leeb, the right shoulder strain, inasmuch as it could not have been aware of a diagnosis that would not be offered for more than four years. Plaintiff was, however, afforded an opportunity to have what she believes to be her "true" injury considered by OWCP during the reconsideration process. The decisions of the OWCP and the ECAB make clear that these bodies thoroughly considered and rejected plaintiff's "true injury" argument after weighing the evidence offered to support the argument.

While plaintiff couches her attacks upon these decisions as implicating due process, it is clear that through this lawsuit plaintiff is actually inviting the Court to second guess the OWCP's evaluation of the evidence.[5] It is simply not within the providence of this Court to review "errors of fact or law by the administering agency." *Czerkies,* 73 F.3d at 1441. At every step of the administrative process, plaintiff was afforded an opportunity to be heard and

---

[5] This conclusion is bolstered by plaintiff's suggestion in her opposing brief that the medical opinion of Dr. Leeb, which formed the basis for the OWCP's original decision to accept a right should strain injury, is not entitled to deference. (Docket No. 20 at 18).

9

to present evidence. While Dr. Djuric's report was not available at the original hearing, plaintiff was still presented with an opportunity to put this evidence before the Board and argue its importance to her claim. The Court finds no deficiency in the procedures by which plaintiff's claim was processed.[6] While plaintiff may not like the outcome, the fact that she was not given a brand new hearing four and one-half years later does not raise a due process concern. Indeed, "[t]he government does not violate the Constitution every time it mistakenly denies a claim for benefits." *Id.* at 1443. Inasmuch as plaintiff was afforded all the process she was due, the Court lacks jurisdiction to review the matter further.[7] *See e.g., Owens*, 860 F.2d at 1364 (absent a claim of a colorable constitutional violation, a district court lacks jurisdiction to review a determination under FECA).

## 2. Hearing Before Two Member Panel [8]

The regulations governing the OWCP, as set forth by the Secretary under 5 U.S.C. § 8149, provide that the OWCP shall consist of "three members appointed by the Secretary of Labor, one of whom is designated as Chairman of the Board and administrative officer." 20 C.F.R. § 501.2(b). "A decision of not less than two members shall be the decision of the Board." 20 C.F.R. § 501.6(b). Plaintiff argues that the fact that the ECAB panel, which presided over her hearing involving her appeal from the OWCP's decision denying her request for reconsideration, consisted of only two members violated § 501.2(b) and deprived her of due

---

[6] Plaintiff also argues that she was denied due process because her request to be evaluated by an "independent" physician selected by OWCP was denied (Docket No. 1 at ¶ 35). Because the OWCP and the ECAB determined that plaintiff's own doctors' reports did not raise a question as to the validity of their prior administrative decisions, there was no need to order another examination.

[7] Plaintiff's allegation that the failure to provide her with a new hearing on her "true" injury violated her constitutional right to substantive due process similarly is without merit. U.S. Const., Amend. 14, § 1. The fact that the OWCP and the ECAB rejected plaintiff's argument after carefully weighing the evidence she offered in support of it does not amount to "an arbitrary exercise of the powers of government." *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998). Nor does this conduct "shock the conscience" such that it violates the "decencies of civilized conduct." *Lewis*, 523 at 848, *citing Rochin v. California*, 342 U.S. 165, 172-73 (1952).

[8] After the Court received the initial briefs on the motion to dismiss, the Court requested that the parties submit additional briefs on the specific issue of the propriety of a two-member panel for OWCP proceedings (*See* Docket Nos. 30 and 31).

process (Docket No. 1 at ¶ 31). Defendants insist, however, that the fact that the decision was rendered by two panel members satisfies the requirements of § 501.6(b).

Plaintiff has suggested that the presence of one more member on the panel would have been beneficial in that "[i]f a third member was present, that judge would have input into the ultimate decision and, more likely or not, if he or she disagreed, could influence one of the other two" (Docket No. 24 at 18). While three heads may very well be better than two, it is clear that the Secretary, in enacting these regulations, did not intend for the absence of one panel member from the hearing to render the panel's decision invalid.  In *In re Liverpool*, 10 E.C.A.B. 404 (1959), one member of the panel was not able to attend the hearing but participated in the decision, nonetheless, after reviewing the transcript from the proceedings. The Board ruled that the regulations governing panels did not "require that every Board Member be present . . .." *Id*. at 405. In reaching the conclusion that the absence of one panel member at the hearing did not invalidate the proceeding, the Board underscored the fact that only two members need decide a case." *Id.* Indeed, the use of two member panels is not uncommon in the ECAB. *See e.g., In re Moss*, 2 E.C.A.B. 35 (1948); *In re Thamer*, 2 E.C.A.B. 88 (1948).

Similarly, the participation of two members by a three member panel has been determined to be appropriate in other arenas. In *Murray v. Nat'l Broadcasting Company, Inc.*, 35 F.3d 45 (2nd Cir. 1994), the court ruled that the fact that one judge on an appellate panel recused himself prior to oral argument did not invalidate the two-judge panel's decision. While the court noted that "in the normal course of adjudicating appeals, consideration by three judges is preferable," it emphasized that the need to efficiently resolve legal disputes had to be balanced against the need for "judicial pluralism." *Id.* at 48. *See also Lopez v. California State Prison at Corcoran*, 2007 U.S. Dist. LEXIS 4039 (E.D. Cal. Jan. 19, 2007) (inmate was not denied an

11

impartial hearing when he appeared before a two member panel).

For the Court's purposes, the only relevant question is whether the failure to assign plaintiff's case to a three-member panel rendered the entire proceeding constitutionally inadequate. It is clear from the record that plaintiff was afforded a meaningful opportunity to be heard and to present evidence in support of her claim. *See Matthews*, 424 U.S. at 333. While the Court would have preferred that a three-member panel be designated under 20 C.F.R. § 501.2(b) to preside over the hearing, plaintiff has not demonstrated that the absence of one panel member rose to the level of a constitutional violation. The fact that the decision was rendered by two members of the panel, as provided for in 20 C.F.R. § 501.6(b), is simply further evidence that plaintiff was afforded the process she was due. Consequently, the absence of one member from the panel does not raise a constitutional concern to support federal jurisdiction.

### 3. Right to Subpoenas under FECA

Plaintiff also attacks the constitutional sufficiency of FECA, itself, by arguing that the statute's failure to specifically provide claimants with a right to issue subpoenas to obtain medical evidence robs them of due process. FECA grants the Secretary subpoena authority to "compel the attendance of witnesses" as well to require "the production of books, papers, documents, and other evidence." 5 U.S.C. § 8126. The Secretary delegated this authority to the Director of OWCP. 20 C.F.R. § 10.1. By regulation, OWCP has limited the authority to issue a subpoena under 5 U.S.C. § 8126 to the OWCP hearing representative and at the request of the claimant. 20 C.F.R. § 10.619. In addition, the ECAB has construed the language of 5 U.S.C. § 8126 as giving the OWCP discretion to grant or reject requests for subpoenas. *See In re Norman Bruneau,* 38 E.C.A.B. 746 (1987).

With respect to her claim, plaintiff maintains that she was deprived due

12

process when the OWCP denied her February 15, 2005 request to subpoena the medical records from U.S. Healthworks [9](Docket No. 1 at ¶ 29). Under 20 C.F.R. § 10.619, "a claimant may request a subpoena only as a part of the hearing process, and no subpoena will be issued under any other part of the claims process." § 10.619(a). All decisions to grant or deny subpoena requests rest within the discretion of the hearing representative. § 10.619.

Of course, plaintiff did not request a subpoena as part of the hearing process, inasmuch as she had already filed an appeal with ECAB by the time she made the request. Consequently, her request did not fall within the regulation, and the denial of the request did not amount to an abuse of discretion. See § 10.619(a).

More importantly for the Court's purposes, the rejection of the subpoena request did not amount to a deprivation of due process. The inability to cause a subpoena to issue "is not a per se violation of [the] right to procedural due process." *United States v. Woods*, 931 F. Supp. 433, 441 (E.D. Va. 1996) (counsel's inability to obtain subpoenas prior to a hearing under FECA was not a due process violation). *See Wool v. Maryland-National Capital Park & Planning Com.*, 664 F. Supp. 225, 231 (D. Md. 1987). Plaintiff has not shown any prejudice from this denial. She was permitted the assistance of counsel throughout the administrative proceedings, she was allowed to offer numerous physician reports at the hearing and on appeal and reconsideration, and she was also afforded the opportunity to testify. She cannot show that she did not have other means by which she could prosecute her claim. Indeed, she has not even demonstrated that the records from U.S. Healthworks would have been of any assistance to her. All she offers is her unsubstantiated belief that "U.S. Healthworks may well support the correctness of Dr. Djuric's diagnosis and that her present dysfunction/disability relates back to

---

[9]According to the Complaint, plaintiff was examined by Dr. Perry at U.S. Healthworks for a pre-employment screening for future employment with the United States Postal Service (Docket No. 1 at ¶ 23).

her April 23, 1988 injury" (Docket No. 20 at 19). In light of substantial process plaintiff was afforded at the administrative level, her speculation as to the possible weight of the documents to be subpoenaed cannot establish a constitutional violation.[10]

Ultimately, plaintiff has failed to raise even a question as to whether she was denied due process at the administrative level. She was permitted an opportunity to present her claims in multiple hearings. She was also afforded reconsideration of the adverse decisions. The essence of due process is the opportunity to be heard at a meaningful time and in a meaningful manner. *Matthews*, 424 U.S. at 333. Plaintiff received this opportunity and was afforded all the procedural protection to which she was entitled. Her attacks on the administrative process do not raise constitutional issues that would give this Court jurisdiction. Consequently, dismissal of this action for lack of subject matter jurisdiction is necessary.

## IV.
## CONCLUSION

For all the foregoing reasons, defendants' motion to dismiss (Docket No. 6) is **GRANTED**. This case is dismissed.

**IT IS SO ORDERED.**

Dated: May 17, 2007                               s/ Sara Lioi
                                                  Hon. Sara Lioi
                                                  United States District Judge

---

[10] Plaintiff also suggests that the statutory limitation on the right to have subpoenas issued under 5 U.S.C. § 8126 and 20 C.F.R. § 10.619(a) violates a claimant's right to "the equal protection of the law." Plaintiff has offered no authority, or even any legal analysis beyond her declaration, that would suggest that the regulations governing the issuance of subpoenas discriminate against a suspect class in such a way as to impose a substantial burden upon that class in violation of the Equal Protection Clause of the United States Constitution. U.S. Const., Amend. 5. *See Califano v. Boles*, 443 U.S. 282, 296 (1979).